# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

# FILED

**October 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **GARY BERNARD SANDERS, ET AL** | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | Lauderdale Circuit No. 4973 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 02A01-9810-CV-00299 |
| **DONAL CAMPBELL, ET AL,** | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LAUDERDALE COUNTY
AT RIPLEY, TENNESSEE

THE HONORABLE JOSEPH H. WALKER, III, JUDGE

For the Plaintiffs/Appellants:

Gary Bernard Sanders, Pro Se
Memphis, Tennessee

For the Defendants/Appellees:

Paul G. Summers
Michael E. Moore
Elena J. Xoinis
Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

## OPINION

This case involves a claim by a prisoner alleging a violation of civil rights. The plaintiff prisoner is a "jailhouse lawyer" who alleges that the prison's legal facilities were insufficient and contends that he was not allowed access to other prisoners in order to provide them legal advice. The trial court dismissed these claims. We affirm.

On June 27, 1997, plaintiff inmates Gary Bernard Sanders, Bobby Jeffries, Issac Herron, Lamar Fletcher, Willie Stigger and Verdis Chambers filed a complaint in the Circuit Court for Lauderdale County, Tennessee, alleging violations of their civil rights under 42 U.S.C. § 1983 while they were incarcerated at the Cold Creek Correctional Facility ("Cold Creek"). Named as defendants in the lawsuit were numerous employees of the Tennessee Department of Correction: Donal Campbell, Commissioner of the Tennessee Department of Correction; Charles Bass, Assistant Commissioner of the Tennessee Department of Correction; Alton Hesson, Cold Creek's Warden; Jimmy N. Harrison, Cold Creek's former Warden; Tommy Mills, Associate Warden at Cold Creek; Bobby Tillman, a Unit Manager at Cold Creek; Pam Nimmo, a counselor at Cold Creek; Patricia Temple, also known as Patricia Steward, also a counselor at Cold Creek; Larry Hunter, Bettye Kirkpatrick, Patricia Galloway, and Lois Montgomery, all Corporals at Cold Creek; Jason L. Hamilton, a Correctional Officer One at Cold Creek; and William Webb, formerly a Correctional Officer One at Cold Creek, later assigned to the West Tennessee High Security Facility. The plaintiffs asserted *inter alia* that the prison legal assistance program and the prison's law library did not meet constitutional standards and therefore denied the prisoners' constitutional right of access to the courts. Plaintiff Gary Bernard Sanders (" Sanders"), a self-described "jailhouse lawyer," alleged that prison officials retaliated against him for attempting to provide legal assistance to other prisoners by, among other things, denying him access to

segregated inmates.  Sanders is the only plaintiff who appealed the trial court's disposition of the lawsuit.

Cold Creek maintains a prison law library and a prison legal assistance program.  Inmates approved by the warden are permitted to serve as law library clerks, aides and as inmate legal helpers. Only approved inmate legal helpers are permitted to meet with and provide legal assistance to inmates who have been placed in segregation.  Sanders worked as a law library clerk at Cold Creek.  While Sanders describes himself as a "jailhouse lawyer" who occasionally assists other

inmates in legal matters, Sanders was not on the approved inmate legal helper list. Consequently, he was denied access to segregated inmates.

In his lawsuit, Sanders claimed that prison officials promulgated rules which hindered the inmates' use of the law library, failed to adequately train inmate legal helpers, limited access to photocopying and inmate telephone systems for legal purposes, and modified Department of Correction rules regarding payments for notary services, sick call, and disciplinary infractions. Sanders alleged that these actions violated the inmates' constitutional guarantee of meaningful access to the courts.

Sanders also alleged that, in retaliation for his attempts to provide legal assistance to other inmates, prison officials denied him access to segregated inmates who had requested his legal assistance, conducted searches of his person and of his cell, subjected him to drug tests, issued false disciplinary reports against him, and subjected him to the prison disciplinary process. In addition, Sanders alleged that prison officials unlawfully confiscated his word processor and storage disks. Sanders also alleged that prison officials violated the Eighth Amendment to the Constitution, inflicting "cruel and unusual punishment" on him by subjecting him to unsanitary conditions in the library restroom.

The defendants filed a motion to dismiss the complaint, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, for failure to state a claim. Plaintiffs Sanders, Willie Stigger, Verdis Chambers and Lamar Fletcher each filed responses to the defendants' motion to dismiss.

The trial court ruled that the plaintiffs had failed to comply with Tennessee Code Annotated § 41-21-801 et seq., which sets forth the prerequisites for inmates to file claims in the state courts. In addition, the trial court found that there could be no liability under 42 U.S.C. § 1983 for retaliation on a theory of respondeat superior. The trial court found further that the plaintiffs had failed to state an Eighth Amendment violation, and that neither the State of Tennessee nor its employees, sued in their official capacities, are "persons" as that term is defined under 42 U.S.C. § 1983. Finally, the trial court found that under Tennessee Code Annotated § 9-8-307(h), state officers and employees are absolutely immune from liability for acts or omissions occurring in the scope of their office or employment. Consequently, the trial court dismissed the lawsuit in its entirety. Only Sanders appealed the trial court's

order of dismissal.

On appeal, Sanders alleges that the trial court erred in finding that Sanders failed to comply with Tennessee Code Annotated § 41-21-805; in finding that Sanders failed to establish a violation of his constitutional right of access to the courts; and in concluding that Sanders failed to establish either a claim of retaliation or an Eighth Amendment claim.

In *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128 (Tenn. App. 1990), this Court said:

> A motion to dismiss pursuant to Rule 12.02(6), Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. *Cornpropst v. Sloan*, 528 S.W.2d 188, 190, 93 A.L.R.3d 979 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *Cornpropst*, 528 S.W.2d at 190. A complaint should not be dismissed upon such motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975).

*Id.* at 130; *see also Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). Therefore, our review is *de novo* upon the record, with no presumption of the correctness of the trial court's ruling.

On appeal, Sanders first alleges that the trial court erred in finding that the lawsuit should be dismissed because he failed to comply with the statutory prerequisites for inmates to file claims in state court. Tennessee Code Annotated § 41-21-805 provides:

> **Affidavit of inability to pay - Requirements. -** (a) Any inmate who files a claim with an affidavit of inability to pay costs shall file a separate affidavit with the following information:
>
> (1) A complete list of every lawsuit or claim previously filed by the inmate, without regard to whether the inmate was incarcerated at the time any claim or action was filed; and
> (2) For each claim or action listed in subsection (a):
>     (A) The operative facts for which relief was sought;
>     (B) The case name, case number and court in which the suit or claim

was filed;

(C) The legal theory on which the relief sought was based;

(D) The identification of each party named in the action; and

(E) The final result on the action, including dismissal as frivolous or malicious under this part or otherwise.

(b) If that affidavit filed under this section states that a previous suit was dismissed as frivolous or malicious, the affidavit must state the date of the final order affirming the dismissal.

(C) The affidavit must be accompanied by a current certified copy of the inmate's trust account statement.

*Id.* Thus, under this statute, Sanders was required to file with the complaint an affidavit of his inability to pay, an affidavit regarding his history of prior lawsuits, and a certified copy of his trust account statement. While Sanders filed a "Uniform Civil Affidavit of Indigency," the record does not include any affidavit by Sanders regarding his history of any prior lawsuits or a certified copy of his trust account statement. Consequently, dismissal on this basis was appropriate. *See Farnsworth v. Compton, et al.,* No. 02A01-9809-CV-00257, 1999 WL 360567 (Tenn. App. June 7, 1999). However, since dismissal on this basis would be without prejudice, we must examine the other issues raised on appeal.

Sanders alleges further that the trial court erred in finding that he had failed to establish a violation of his constitutional right of access to the courts. His allegations fall into two categories: (1) that prison officials wrongfully prevented him from having access to inmates in segregation, in order for him to assist the segregated inmates with their legal claims, and (2) that prison officials took actions which generally made the pursuit of legal claims, by Sanders or other inmates, more difficult, such as limiting access to photocopying and issuing rules hindering access to the law library.

It is well established that prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). A constitutionally acceptable method of assuring meaningful access to the courts is for prison authorities to provide prisoners with adequate law libraries or adequate assistance from persons with legal training. *See id.* at 2177, 2180 (citing *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed. 2d 72 (1977)). Based on the doctrine of standing, an inmate alleging a violation of the right of access to the courts must show actual injury. *See Lewis*, 116 S.Ct. at 2179. A prisoner "cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id.* at 2180. He must demonstrate that "the alleged shortcomings ... hindered his

efforts to pursue a legal claim." *Id.*

Sanders claims first that prison officials violated his rights by denying him access to segregated inmates, in order for him to provide legal assistance to them. However,

> . . . [T]he right of access to the courts does not guarantee [the plaintiff prisoner] the right to represent an other inmate, nor does it authorize him to act in any representative capacity. . . . Rather, the inmate whom he might be trying to advise may have some liberty interest and a corresponding right to assert that right in court. From this right is derived a right to receive legal advice from inmates, if other means of protecting that access to the courts are not adequate.

*Harrison v. Seay*, 856 F. Supp. 1275, 1279 (W.D. Tenn. 1994). Thus, while the inmates whom Sanders sought to assist may arguably have standing to assert a denial of their right of access to the courts, Sanders has no such standing, based only on prison officials' denial of opportunities for Sanders to give legal advice. The trial court's decision on this issue is affirmed.

Sanders also alleges various problems with his use of the prison legal facilities, such as rules which hindered access to the law library and limitations on access to photocopying equipment. He does not, however, allege that prison officials prevented him from pursuing his own legal claims. Under *Lewis*, in order to satisfy the actual injury requirement, Sanders must show that "the alleged shortcomings in the library or the legal assistance problem hindered his efforts to pursue a legal claim." *Id.*, 116 S. Ct. at 2180. Therefore, Sanders fails to allege facts showing an actual injury, and the decision of the trial court is affirmed on this issue.

Sanders argues further on appeal that the trial court erred in dismissing his claims of retaliation. He asserts that prison officials retaliated against him for providing legal advice to other inmates by denying him access to segregated inmates who had requested his assistance, by conducting searches of his person and of his cell, by subjecting him to drug tests, by issuing false disciplinary reports against him and by subjecting him to the prison disciplinary process. He argues that their actions violated 42 U.S.C. § 1983.

Government actions which standing alone do not violate the Constitution may nevertheless be constitutional torts if motivated by a desire to punish an individual for exercising a constitutional right. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). The essence of a retaliation claim is that

the plaintiff engaged in conduct protected by the Constitution or by statute, that adverse action was taken against the plaintiff, and that the adverse action was taken because of the protected conduct. *See id.* at 386-87.

Consequently, it must first be determined whether Sanders was engaged in protected conduct. As noted above, "an inmate does not have an independent legal right to help other prisoners with their legal claims." *Id.* at 395, *see also Harrison*, 856 F. Supp. at 1279. As explained in *Thaddeus-X*:

> [A] "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court . . . . Thus, only if X's assistance is necessary to vindicate Bell's right of access to the courts can X too, state a claim of retaliation.

*Id.*, 175 F.3d at 395. Therefore, in the case at bar, Sanders cannot show that he was engaged in protected conduct in advising other inmates, unless he can show that, in the absence of Sanders' assistance, the other inmates were denied meaningful access to the courts. As noted above, this cannot be shown merely by alleging that the prison legal facilities were "sub-par;" it must be shown that the inmates whom Sanders sought to assist were unable to pursue a particular legitimate legal claim in the absence of Sanders' help. *See Lewis*, 116 S. Ct. at 2180.

In this case, the record indicates that Cold Creek maintained both a prison law library and an inmate legal assistance program. Any inmate, such as a law library clerk like Sanders, could assist inmates who were not in segregation. However, only inmates on the approved inmate legal helper list were permitted to assist prisoners in segregation.

Plaintiff/Inmate Willie Stigger[1] alleged in the Complaint that, while incarcerated at another prison, that he had filed a lawsuit in the U.S. District Court for the Western District of Tennessee styled *Stigger v. Gilless, et al.*, No. 95-2920. Stigger stated that this lawsuit was filed with the assistance of an inmate legal helper at the other prison. Stigger was subsequently transferred to Cold Creek, and his federal lawsuit was later dismissed for failure to prosecute. After dismissal of the federal lawsuit and while he was serving a ten day segregation at Cold Creek, Stigger first asked for Sanders' assistance in preparing a notice of appeal and an application for permission to proceed as a poor person, to be filed with the United States Court of Appeals for the Sixth Circuit. Stigger

stated:

> Inmate Gary Sanders, informed the Plaintiff [Willie Stigger] that he could not prosecute the appeal if the sixth circuit granted leave to proceed in forma pauperis. Inmate Gary Sanders had other legal obligations that consumed most of his time.

Stigger's allegations, if taken as true, do not establish that he was unable to pursue his legal action in the absence of help from Sanders. Stigger did not allege that he was prevented from using the law library before and after his period of segregation, nor did he allege that other legal helpers on the approved list could not assist him. Indeed, Stigger's Complaint acknowledged that Sanders assisted Stigger with his appeal of the Stigger's lawsuit to the Sixth Circuit, but stated that Sanders "had other legal obligations that consumed most of his time." Under these circumstances, Stigger has not been denied meaningful access to the courts.

Plaintiff inmates Verdis Chambers and Bobby Jeffries[2] alleged in the Complaint that, while they were in segregation, prison officials denied their requests for legal assistance from Sanders on the basis that Sanders was not on the approved inmate legal helper list. Neither Chambers nor Jeffries alleged that they did not have other means of access to the courts or that they were not able to use the law library upon release from segregation, and neither alleged that they were denied reasonable alternatives to Sanders' assistance. Neither alleged facts which, if taken as true, would establish that either was unable to pursue a particular lawsuit in the absence of assistance from Sanders.

In addition, plaintiffs Issac Herron and Lamar Fletcher[3] alleged in the Complaint that prison official hindered them in assisting other inmates with legal claims. Herron was an approved "inmate legal helper," and Fletcher was an inmate law library clerk. However, neither Herron nor Fletcher alleged that they were pursuing their own legal actions or that were prevented from pursuing any action in the absence of assistance from Sanders. Instead, they alleged that they were hindered in assisting other inmates. Their claims are independent from those of Sanders and have no bearing on Sanders' appeal.

Thus, the allegations of the inmates whom Sanders sought to assist do not establish that reasonable alternatives to Sanders' assistance were not available. Indeed, it is undisputed that the prison

provided a law library and a list of approved legal helpers to assist prisoners in segregation, although Sanders was not on the list of approved inmate helpers. Therefore, since the inmates whom Sanders sought to assist cannot show that they were unable to pursue an particular legal claim without help from Sanders, Sanders cannot establish the first prong of his claim for retaliation, i.e. that he was engaged in " protected activity." Consequently, we affirm the trial court's decision to dismiss Sanders' retaliation claim.

Sanders also appeals the trial court's dismissal of his claim under the Eighth Amendment to the United States Constitution. Sanders alleges that prison officials violated the prohibition against "cruel and unusual punishments" by subjecting him to unsanitary conditions in the prison library restroom.

The Eighth Amendment to the United States Constitution, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). In order to establish an Eighth Amendment claim, a plaintiff must meet two requirements. First, the alleged deprivation "must be, objectively, 'sufficiently serious,' " meaning that the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citations omitted). Secondly, the plaintiff must demonstrate the prison official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *See id.,* 511 U.S. at 834, 114 S.Ct. at 1977 (citations omitted). In cases involving prison conditions, a plaintiff must show that the prison official was deliberately indifferent to inmate health and safety. *Id*. The Constitution does not mandate comfortable prisons. *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324.

In this case, Sanders clearly does not allege a deprivation that is objectively "sufficiently serious." Subjecting Sanders to unsanitary conditions in the library restroom does not rise to the level of a denial of the minimal civilized measure of life's necessities. Consequently, Sanders fails to state a claim for violation of the Eighth Amendment. The decision of the trial court is affirmed on this issue.

The decision of the trial court is affirmed.  Costs are assessed against the Appellant, for which execution may issue if necessary.

                                                      **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**ALAN E. HIGHERS, J.**